Good afternoon. Oh, great. Thank you. May it please the court. My name is Eitan Castle-Janich and I am representing Angela Stramol-Spirz in this appeal. Stramol-Spirz was 54 years old when she applied for disability benefits and she is 60 years old now. She has numerous impairments including fibromyalgia and I'm not going to list them all here but she has a lot of different things wrong with her. Some of which the ALJ found to be severe, some of which the ALJ did not find to be severe. But the combined functional effects of Stramol-Spirz's many impairments have prevented her from working since September 2013. The ALJ first of all erred by failing to identify all of her severe impairments. Now that was not a harmful error by itself. It became harmful when the ALJ failed to include all of the limitations from those impairments in a residual functional capacity assessment. The ALJ's main error I think here was in her treatment of fibromyalgia. There were three treatment providers, Ms. Sales, Dr. Smith, and Dr. Parrott, all of whom opined that Stramol-Spirz had significant limitations which would prevent her from working. And these limitations arose largely from her fibromyalgia, though not entirely because she had these other impairments as well. The ALJ rejected all three of these treatment providers' opinions. And the ALJ also rejected Stramol-Spirz's testimony about her symptoms and with an impairment like fibromyalgia, which is so heavily connected to symptomatology, the only way to know how impaired somebody is from fibromyalgia is to ask them. Ultimately, the doctors agreed, her doctors agreed that it was disabling essentially. But the ALJ rejected their opinions, and the ALJ rejected her testimony in which she described the many limitations she has from fibromyalgia. The ALJ also rejected her daughter's lay observations in which she also described the many limitations that her mother had largely from the fibromyalgia. And as a result of all of those errors, the ALJ's residual functional capacity assessment didn't include the limitations described by Ms. Sales, Dr. Smith, and Dr. Parrott, didn't include the limitations described by Stramol-Spirz, didn't include the limitations described by her daughter. As a result of all of these errors, the ALJ's step four finding was not supported by substantial evidence. And if you have any particular things you wanted me to talk about, I'd like to focus on any questions that you have. Well, I have a question. So I think, well, I'll just tell you, I think cases involving fibromyalgia are difficult cases because there often isn't objective evidence. But here the ALJ found that the symptoms she experienced improved with conservative treatment and that she, even though she was authorized to go see a specialist, a rheumatologist, she didn't do so. And I'm wondering whether or not those are two really substantial reasons to credit the ALJ's finding here. Well, first, she didn't go to a rheumatologist because it's not that easy to get into a an appointment with a rheumatologist. And that is in the record, but it wasn't in the record that was before the ALJ. So I think that part is not correct as far as it being a valid reason to reject. You said it wasn't in the record before the ALJ? I don't think so. I'm not positive about that. I'd have to look that up. With regard to conservative treatment, well, that's always true with fibromyalgia. There is no non-conservative treatment available for fibromyalgia. That's the problem. I mean, just like it's a difficult impairment to diagnose, it's a diagnosis of exclusion where you have to exclude other causes of the symptoms that are related to fibromyalgia. Similarly, once you find you have it, there's not much they can do about it. They can recommend exercise. They can give you various medications, which she had tried. She, in fact, was taking gabapentin, and that's in the record, and that was the conservative treatment that was helpful. But she testified while it reduced her pain, it did not eliminate it, and it did not eliminate the mental fog, which was really one of the more significant symptoms that she was experiencing. And it's once again a symptom that her doctors all agreed with it, and she described it, but the ALJ rejected everybody's descriptions. If nobody has questions, I'd be happy to reserve my time for rebuttal, and I will try to give you a definitive answer on your question. Okay, thank you. Can I just ask a quick one? Go ahead. There is evidence that her depression and fibromyalgia were manageable with medication. Doesn't the record reflect that? Yes, they were being managed with medication, but they weren't being eliminated. See, the thing is that's not a reason to reject her testimony about the symptoms she was continuing to experience, even while she was taking antidepressant medication. But what does manageable mean then? Manageable to me means that it makes the ailment so diminished to the extent that you can begin to function within normal limits. Manageable could mean that. There are people whose fibromyalgia is managed with medication and who are working, and manageable can mean we're doing the best we can and we're reducing her symptoms, but that doesn't mean that they're all gone. That's not a reason. Once again, all three of her treating physicians said the symptoms were still there, and she described the symptoms she was still experiencing while also admitting that it was helpful. She kept taking gabapentin because it was helpful, but it didn't eliminate her symptoms. And I think that's the difference that I would cite is that manageable does not mean that you're completely functional. It means you're doing better. Well, I wouldn't characterize it that way. I mean, for me, when I read the word manageable, it means that it's ameliorating the symptoms to the point where you can function within normal limits. I mean, if you're telling me that manageable means it has some effect of unknown significance, I just have trouble understanding that definition. It's a medical term, and it can mean different things for each individual. And so, if your pain level is at a nine, and you take medication that knocks it down to a four, you're managing the pain by knocking your pain level down to a four, but it doesn't necessarily mean that you can fully function with that remaining pain level. I think manageable does not mean cured. It does not mean eliminated. But it does mean responsive, too. It means that she responded to medication. That is correct. Okay. Thank you. Thank you, counsel. Ms. Watson. Good afternoon. Catherine Watson for Commissioner. This case concerns claimants who allege disabling limitations, primarily on the basis of fibromyalgia, depression, and anxiety. But the record indicates that her impairments were generally well-controlled with medication. The AOJ here reviewed the evidence in the record and reasonably determined that the claimant was not disabled from September 24, 2013 to June 1, 2017, the date of the AOJ's decision. The claimant here challenges a number of the AOJ's findings, including the AOJ's evaluation of her mental impairments as well as the AOJ's evaluation of the opinion and testimonial evidence. It's our position that substantial evidence supports each of these findings in this court should affirm. Turning to the AOJ's evaluation of the claimant's mental impairments, the AOJ here reviewed the evidence of anxiety and depression in the record, but reasonably concluded that these impairments were not severe. In making this finding, the AOJ pointed to treatment notes as well as conclusions of examining providers, indicating that both her anxiety and depression were well-controlled with medication. The AOJ also discussed how she was referred for mental health counseling but did not follow through with that referral and instead managed her mental impairments solely through medication prescribed by her primary care physician. In addition, the AOJ pointed to mental status examinations, which generally revealed normal affect, normal concentration, normal judgment, and insight. Based on this evidence, the AOJ reasonably concluded that the claimant did not meet her burden of showing that her mental impairments significantly impaired her functioning. The AOJ also reasonably discounted the claimant's subjective complaints of disabling limitations. In addition to finding that her mental impairments were generally controlled with medication, the AOJ also found that her fibromyalgia and other impairments responded favorably to medication. As this court held in Tomasetti v. Struh, a favorable response to medication can discount allegations of disabling pain. The AOJ pointed to treatment notes in January 2014 indicating her pain was controlled with gabapentin. In March 2015, an examining doctor found that her pain was well-treated. Towards the end of 2016, treatment notes indicated that her pain was fairly well-controlled with medication. The AOJ also discussed how her treatment was generally conservative, even for fibromyalgia. She treated her fibromyalgia with a single medication, which was gabapentin. Her primary care physician indicated that her treatment of choice was exercise. There is evidence that, at least towards the end of the relevant period, she was referred to a physician. The AOJ also discussed symptoms that could have stemmed either from fibromyalgia or mental health impairments. For example, she alleged significant memory and concentration defects, but testing showed normal memory and intact concentration. For these and other reasons, the AOJ reasonably concluded that her symptoms and allegations were not fully reliable. Turning to the AOJ's evaluation of the opinion evidence, the AOJ reasonably discounted the opinions of the claimant's treating physicians and providers, reasoning that they did not provide objective evidence in support of their opinions and instead appeared to rely primarily on the claimant's subjective complaints. I note that opposing counsel did note that, yes, fibromyalgia is diagnosed entirely on the basis of the claimant's subjective complaints, but this court, as well as SSR 122P, the agency's rulings, does indicate that objective evidence is still necessary. What that means is what constitutes objective evidence shifts. Things like tender point examinations, which certainly rely on the claimant's subjective complaints, are considered objective evidence. Here, Dr. Parrott, in June 2016, and again a few months later in October 2016, opined that the claimant had disabling limitations, but she also expressed... Can I ask you a question? Yes. Didn't the AOJ err by discounting the claimant's testimony about her fibromyalgia symptoms on the didn't that happen? It's unclear because she also had a severe impairment of a left knee impairment, and the AOJ did not differentiate those two impairments when talking about the evidence that she found that undermines those allegations. So some of the evidence, such as normal gait or no tingling in the knees, is objective evidence, and it would not be appropriate to use that evidence to discount allegations of severe fibromyalgia, but it would be appropriate to use the objective evidence to discount her allegations that her knee impairment precluded her work, and that was one of the lists of impairments that she said... Right, but the AOJ didn't differentiate between the two, correct? She did not, but when she did expressly discuss fibromyalgia, she did express that in the context of responding favorably to medication. So she was quite clear that she was discounting her fibromyalgia because the claimant responded favorably to conservative treatment medications. But isn't that... I mean, doesn't... didn't counsel for the claimant make a good point, and I think it is a good point, that just responding to medication just simply means that there seems to be some effect, and maybe that's a problem here because there being some effect is not the same thing at all as being... or manageable is not the same thing at all as being effectively treating it such that one can not consider one to be disabled. Well, two points for that. First is, we certainly... it's not our position that medication eliminated her symptoms. The AOJ did find that she had significant limitations. She limited her to a range of light work, but going by this court's precedence, in Warre, for example, impairments that are, quote, well-managed with medications are not considered disabling. And similarly, in Tomasetti... Does it say well? Did the report here say well-managed? We do have... yes. So for example, in March 2015, there's a conclusion her pain was well-treated. That's in Exodus of Record 558. In November of 2015, her pain medication were working well. That's in ER 634. Towards the end of 2016, pain was fairly well-controlled with gabapentin. That's in ER 779. So there is evidence that her pain was well-managed with medication, and that she... this court has also held that responding favorably to conservative treatment similarly can undermine allegations of disabling pain. And here we have conservative treatment. We have a treatment of one medication, gabapentin, and she certainly responded favorably to that treatment. Turning to the AOJ's evaluation of Dr. Parrott's opinion, Dr. Parrott did expressly state that her first opinion was per patient report. So she did not indicate she had any objective evidence in support of that opinion. Her treatment notes also indicated that she filled out the questionnaire with minimal objective evidence available. And she also state recommended an independent medical examination for, quote, more objective measurement. And notably, no such examination, at least according to the record, took place before either of her opinions. Ms. Salas is the other treatment provider who opined disabling limitations. The AOJ discounted this. For similar reasons, she discounted the claimant's testimony. She found it was unsupported by the treatment record, which generally indicated that the claimant responded favorably to medication. She also reasonably inferred that it appeared to rely primarily on the claimant's subjective complaints. Ms. Salas expressly indicated in her first opinion she did not have access to the longitudinal treatment record, and she'd only at that point seen the claimant, I believe, twice. And this is a diagnosis that is based on a longitudinal record of pain. And in her second opinion, she'd seen the claimant a few more times, but she also filled it out without much explanation for the basis of her conclusions. And at least some of her limitations, such as began, she indicated was per patient report. And so for these reasons, the AOJ reasonably concluded that this opinion was not fully reliable. And finally, the AOJ reasonably discounted the state agency consultant's opinions that she would have moderate limitations in social functioning despite finding her mental impairments not severe in favor of the opinion of Dr. Allison, doing so because he found they were inconsistent with the longitudinal record, which again showed that her mental impairments were generally well controlled of medication. She did not follow through a treatment referral. She had minimal treatment history and normal mental status examinations, and also inconsistent with the findings of Dr. Allison, who found no more than mild deficits in mental functionings. So because the AOJ identified substantial evidence in support of each of her findings, we're asking this court to affirm. Thank you. Thank you, counsel. Mr. Yonich. Thank you. I want to first address Judge Wardlaw's question before. And there was a treatment note, which is dated one month after the AOJ hearing, but it's included in the record. And it was part of the record. In fact, it's an exhibit. It's one of the exhibits that the AOJ included in her exhibit list in her decision. And in that treatment note, it's at 778-779. In that, Strammel's first was requesting a referral to a rheumatologist. And there's no evidence she didn't act on the referral. But once again, the record sort of drops off after the AOJ's decision. So the AOJ did have before her a treatment note that showed that she had requested a referral to a rheumatologist from her treating physician. And yet the AOJ said she had not followed through with requesting treatment from a specialist. With regard to conservative treatment, once again, conservative treatment, if that's all that's available, and it doesn't cure your condition, it's not a reason to disbelieve what your description of the symptoms you're experiencing. Throughout the record, Strammel's first freely admitted that gabapentin was helping. She wouldn't have taken it if it wasn't helping. What's the point? But it was helpful. But that's not a reason to disbelieve her description of how fatigued she was, how tired she was. And in fact, that's the medication she was taking. One of the side effects of gabapentin is well known to be tiredness. But she also had fibromyalgia that would make her tired. And the other, this was just throughout the record, it's documented as one of the symptoms she was experiencing. So I do ask the court to reverse the AOJ's decision. Thank you. Thank you, counsel. Strammel's Spirits v. Saul will be submitted. And this court will stand in recess for 10 minutes.
judges: Wardlaw, Gould, Pregerson